CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 27 2018

JULIA A. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| GREGORY S. HINES, ) | Civil Action No. 7:17-cv-00077 | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | **MEMORANDUM OPINION** | |
| ) | | |
| EARL C. BARKSDALE, <u>et al.</u>, ) | By:   Hon. Jackson L. Kiser | |
|     Defendants. ) |        Senior United States District Judge | |

Gregory S. Hines, a Virginia inmate proceeding <u>pro se</u>, commenced this action pursuant to 42 U.S.C. § 1983. Plaintiff names as defendants: Earl C. Barksdale, who is the former Warden of the Red Onion State Prison ("ROSP"), and ROSP staff Officer Kenneth Rose, K-9 Officer Nicholas Roop, and Nurse Vicky Phipps. Plaintiff alleges that Defendants imposed cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution. Defendants filed a motion for summary judgment, and Plaintiff responded, making this matter ripe for disposition. After reviewing the record, I grant Defendants' motion for summary judgment.

**I.**

Plaintiff began fighting with another inmate inside a crowded housing unit on June 17, 2016. Officer Rose was inside the control booth, but no staff was inside the housing unit. Officer Rose activated the warning buzzer and ordered them to stop fighting and lie down. Although other inmates in the unit lay on the ground, Plaintiff and the other inmate continued to fight. Officer Rose then fired a round of Oleoresin Capsicum ("OC") spray[1] toward them, and again warned them to stop fighting and lie down. Neither Plaintiff nor the other inmate

---

[1] OC spray is a chemical agent similar to what is commonly known as pepper spray or mace and irritates a person's eyes, throat, and nose. <u>See, e.g.</u>, Park v. Shiflett, 250 F.3d 843, 849 (4th Cir. 2001) (describing the physiological effects of OC spray).

complied. Officer Rose next fired six non-lethal "impact rounds" from a multi-launcher. Officer Rose paused between firing each round to again order them to stop fighting. Plaintiff did not comply, even after rounds struck his right calf, lower back, and above his left ear.

A non-defendant officer responded to the housing unit with his K-9. By this time, Plaintiff was still fighting and had pinned the other inmate down on top of the unit stairs. The inmates consistently refused orders to stop fighting both before and after the K-9 bit them. Only after another officer approached the inmates and deployed O/C spray was the fight physically broken up.

Plaintiff was taken to the medical department for assessment after being decontaminated of O/C spray. A non-defendant nurse noted Plaintiff had sustained a dog bite to his right calf, a laceration on the left side of his head, and abrasions. The nurse cleaned the abrasions, "glued shut" the laceration, cleaned and bandaged the dog bite marks, placed Plaintiff in a medical cell for observation, and approved doses of Motrin and Tylenol.[2] Plaintiff saw the facility doctor on June 23, 2016, and returned to his usual cell the following day.

Plaintiff was convicted of a disciplinary infraction for fighting, and Barksdale upheld the conviction after administrative review. A regional administrator subsequently vacated the conviction because Barksdale had not been reviewed the conviction within the ten-day limit.

Plaintiff argues that Officer Rose used excessive force by shooting the impact round at his head. Plaintiff also argues that Nurse Phipps, as the "Medical Dep[artment] Head," was deliberately indifferent to his need for medical treatment, including mental health treatment necessitated by these events. Plaintiff argues that Warden Barksdale "covered up" the actions of

---

[2] The other inmate was sent to a hospital.

his "subordinates" by allowing the destruction of relevant video recordings. Plaintiff alleges that it is a "common occurrence[]" for staff to shoot impact rounds at inmates' heads.

## II.

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the admissible evidence and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing—"that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial.[3] Id. at 322-24. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). However, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).

---

[3] Plaintiff originally alleged that K-9 Officer Nicholas Roop used excessive force but now concedes that he has no viable claim against Roop. Consequently, Roop is granted summary judgment.

3

# III.
## A.

Plaintiff argues that Officer Rose used excessive force when one of the three impact rounds hit him in the side of his head. Determining excessive force depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." Id. at 320-21. The factors to consider include the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, the extent of the threat to the safety of staff and inmates reasonably perceived by responsible officials, any efforts made to temper the severity of a forceful response, and whether the plaintiff was actively resisting. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2473 (2015); Whitley v. Albers, 475 U.S. 312, 321 (1986). Courts recognize that corrections officials must act "in haste, under pressure, and frequently without the luxury of a second chance." Whitley, 475 U.S. at 320. Consequently, the court must give prison officials "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Hudson v. McMillian, 503 U.S. 1, 7 (1992).

Officer Rose is entitled to qualified immunity and summary judgment for shooting Plaintiff with impact rounds. Even viewing the evidence in a light most favorable to Plaintiff, it is evident that Officer Rose was acting in a good faith effort to maintain or restore discipline and was compelled to intervene as best he could from the control booth. See, e.g., Farmer v. Brennan, 511 U.S. 825, 832 (1994) (discussing correctional staff's duty to mitigate inmate on inmate violence).

Plaintiff is a high-security level inmate in ROSP.[4] Plaintiff fought an inmate in a crowded housing unit and refused to stop despite an audible buzzer, commands, and OC spray. Immediate intervention was required to stop the fight, but Officer Rose was restricted to the control booth and without the assistance of correctional staff in the unit. Even after being warned of the impact rounds, after being hit with a round in the leg, and after being hit with a round in the back, Plaintiff continued to fight. Only then did one of six rounds hit Plaintiff in the side of the head while he was moving and tussling on stairs and away from the control booth. Regardless to whether Rose was such an accurate shot that he intended to hit Plaintiff in the head with a non-lethal impact round, Officer Rose's use of force from the control booth is deemed a good faith effort to restore discipline. As evidenced by the video recording, neither the impact rounds nor the K-9 deterred Plaintiff from continuing the fight. Moreover, Plaintiff suffered only a laceration and related pain and swelling, assuming these injuries were not sustained from the fight. Accordingly, Officer Rose is entitled to qualified immunity and summary judgment.

B.

Plaintiff alleges that Nurse Phipps, as the "head of the [ROSP] medical department," was deliberately indifferent to his injuries, evidently because he does not agree with the medical care that was provided by nurses and doctors. A plaintiff must show that a defendant acted with deliberate indifference to a serious medical need to state a claim under the Eighth Amendment for the unconstitutional denial of medical assistance. West v. Atkins, 487 U.S. 42, 48 (1988); Estelle v. Gamble, 429 U.S. 97, 104 (1976); Conner v. Donnelly, 42 F.3d 220, 222 (4th Cir.

---

[4] As is usual at ROSP, Plaintiff was housed there in part because of his lengthy disciplinary offense history, including multiple charges of threatening bodily harm, possessing contraband, inciting a riot, and fighting.

5

1994). A serious medical need is a condition that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

Deliberate indifference requires a state actor to have been personally aware of facts indicating a substantial risk of serious harm, and the actor must have actually recognized the existence of such a risk. Farmer v. Brennan, 511 U.S. 825, 838 (1994). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990); see Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004) ("[T]he evidence must show that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'"). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." Miltier, 896 F.2d at 851-52.

To succeed with an unconstitutional medical treatment claim against non-treating personnel, a plaintiff must show that the official was personally involved with a denial of treatment, deliberately interfered with treatment, or tacitly authorized or was deliberately indifferent to the medical provider's misconduct when even a lay person would understand that the medical provider is being deliberately indifferent. Id. at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id. Supervisory liability is not established merely by showing that a subordinate was deliberately indifferent to a plaintiff's medical need. Id.

Plaintiff fails to establish Nurse Phipps' deliberate indifference or a pervasive and widespread practice of medical indifference. Plaintiff fails to establish Nurse Phipps' direct

6

personal involvement with an alleged constitutional deprivation, and he cannot rely on respondeat superior. See, e.g., Monell v. Dep't of Soc. Servs., 436 U.S. 658, 663 n.7, 691-94 (1978); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001); cf. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994); see also Jones v. Wellham, 104 F.3d 620, 627 (4th Cir. 1997). At most, Plaintiff points to Nurse Phipps' response to an administrative form after he had already been released from the medical cell. However, "[a] superior's after-the-fact denial of a grievance falls far short of establishing § 1983 liability." DePaola v. Ray, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, at *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (Sargent, M.J.) (citing Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006)). Furthermore, Plaintiff fails to establish that unconstitutional medical care is widespread and poses and unreasonable risk of harm of constitutional injury. See, e.g., Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984). Moreover, Plaintiff's disagreement with medical personnel about the course of treatment cannot succeed as a § 1983 claim. See, e.g., Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Accordingly, Nurse Phipps is entitled to qualified immunity and summary judgment.

### C.

Plaintiff complains that Barksdale "allowed" surveillance footage of the fight "to become 'no longer available'" and disregarded policies and procedures when reviewing the disciplinary conviction. Plaintiff fails to establish any injury about the disciplinary conviction because the conviction had been vacated on administrative review. See Mo., Kan. & Tex. Ry. v. Ferris, 179 U.S. 602, 606 (1900) (recognizing moot questions require no answer). Furthermore, "spoliation is not a substantive claim or defense but a 'rule of evidence.'" Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 450 (4th Cir. 2004). To the extent Plaintiff seeks to impose supervisory liability

7

on Barksdale for Officer Rose's use of force, the claim must fail as Officer Rose did not use excessive force in violation of the Eighth Amendment. See, e.g., Shaw, 13 F.3d at 799 (requiring an affirmative causal link involving the constitutional injury suffered by the plaintiff). Accordingly, Barksdale is entitled to qualified immunity and summary judgment.

IV.

For the foregoing reasons, I grant Defendants' motion for summary judgment.

ENTER: This 26th day of June, 2018.

Jackson L. Kiser
Senior United States District Judge